IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ZAVIOR WARD,<br><br>              Plaintiff,<br><br>      vs.<br><br>INTERSCHOLASTIC LEAGUE OF<br>HONOLULU (ILH), *et al.*,<br><br>              Defendant. | Civil No. 25-00415 MWJS-WRP<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION FOR TEMPORARY<br>RESTRAINING ORDER** |

## <u>INTRODUCTION</u>

Plaintiff Zavior Ward is an eighteen year-old high school senior at a private school in Hawai'i.  Like many seniors, Ward hoped to spend his last year of high school playing varsity sports, as he had done in years past.  Instead, he has been barred from practicing and competing due to an eligibility rule.  And a request for an exemption from that rule was recently denied.

Ward now challenges the denial of the exemption request, principally on the ground that the denial was in violation of his right to receive procedural due process before a state actor deprives him of a constitutionally protected property interest.  He seeks a temporary restraining order that would provisionally allow him to participate in the boys' water polo season, which is in its waning days, while this litigation works its way to a more definitive conclusion.

But a temporary restraining order, like other forms of provisional relief, is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). That burden includes the obligation to show a likelihood of success on the merits, or at least serious questions going to the merits. And at this early stage of the litigation, Ward has not made a strong enough showing on the merits of his claims. The current record does not show that Ward has been barred from participation in high school athletics because of the conduct of any state actor. Instead, the current record strongly supports the opposite conclusion—that the denial of the exemption request was made by Defendant, the Interscholastic League of Honolulu ("ILH"), a private nonprofit corporation acting entirely at its own discretion. For this reason, the court must deny Ward's motion.

This is, to put it bluntly, a deeply unsatisfying result. The court's ruling at this stage is merely provisional and based on the limited record developed to date. It remains possible that Ward could prevail on a more fully developed record. But if he were ultimately to prevail, it would be too late for him ever to participate in high school athletics again. Whatever monetary relief he might ultimately obtain, that invaluable opportunity could never be given back to him. Denying him a temporary restraining order thus amounts to denying him a once-in-a-lifetime opportunity to compete. On the present record, however, the court can reach no other result. The law does not

2

authorize the court to grant Ward relief merely based on his showing of irreparable

injury; he must also show that his claims are likely to prevail on the merits—or at least

serious questions going to the merits—and he has not been able to carry that burden.

But while the court cannot grant him the relief he seeks at this stage, Defendant

ILH of course can.  As it has made abundantly clear in this case, ILH has complete

discretion to allow Ward to play in the final games of his high school water polo career.[1]

The court urges ILH to recall that legal obligations are not always a full measure of

one's moral obligations.  Although ILH has prevailed at this stage of the case, it should

consider whether to do right requires it to do more than the law commands.

Ward's motion for a temporary restraining order is DENIED.

## BACKGROUND

1.  ILH is a private nonprofit corporation that operates an interscholastic athletics

league comprised of 18 private high schools, one private charter high school, and one

private co-op program—among them Le Jardin Academy ("LJA") and Defendant

Hawaiʻi Baptist Academy ("HBA").  Dkt. No. 1, at PageID.2 (¶4) and PageID.5 (¶ 12);

INTERSCHOLASTIC LEAGUE OF HONOLULU, "About ILH," https://ilhsports.com/test/ (last

---

[1]      Whether ILH has discretion to allow Ward to participate in *other* sports, and
whether provisional relief might be warranted if ILH persists in denying Ward that
opportunity, are matters that Ward has not distinctly teed up in his current motion for a
temporary restraining order.  If he wishes to pursue arguments of that broader nature,
Ward may request leave to supplement or amend his pending motion for preliminary
injunctive relief, or to file a new motion for a temporary restraining order.

visited October 6, 2025).  Its purpose is "to promote interscholastic activities among

member schools that contribute to the development of good citizenship in student

athletes [and] to foster amateur sports competition among member schools, to be

organized exclusively for charitable and educational purposes."  Dkt. 21, at PageID.177.

ILH serves as the governing body for the athletic programs of its member

schools, and in that capacity sets eligibility standards which students must meet to

participate in ILH-sponsored sports and events.  Dkt. No. 1, at PageID.2 (¶ 4).  Member

schools can apply for exemptions to these rules, which ILH can grant or deny through a

vote at a regular meeting.  Dkt. No. 21-2, at PageID.182.  If an exemption request cannot

wait until the next regular meeting, ILH provides a "fast track exemption request"

whereby a three-member committee will vote to grant or deny the exemption.  *Id.*

Under ILH's rules, students cannot apply for exemptions themselves.  *Id.*

The ILH Operations Handbook governs student eligibility for member schools.

*Id.* at PageID.196.  Section III, 3.1, G of the handbook ("the ILH rule") provides:  "A

student will have <u>four consecutive</u> school calendar years of varsity eligibility from the

date he or she begins 9th grade for the first time at any school."  Dkt. No. 21-1, at

PageID.180 (emphasis in original).  After those four school calendar years elapse,

students are no longer eligible to play ILH varsity sports, no matter their circumstances,

unless an exemption is granted.  The purpose of ILH's eligibility rule is to "prevent[]

older and more experienced individuals from dominating younger and less experienced

4

students" and to "encourage[] academic progress, ensuring sport supports education."

*Id.* at PageID.178.  ILH reserves for itself the authority to make exemptions to this rule,

presumably because it recognizes that the purposes of the rule might not be advanced

in every case of a technical violation.

Each ILH member school is also a part of the Hawaiʻi High School Athletic

Association ("HHSAA").  Dkt. No. 24-3, at PageID.196 (admitted into evidence as

Defendant's Exhibit F, Dkt. No. 35-1, at PageID.281 ("ILH Ex. F")).  ILH is one of five

interscholastic athletic "conferences" that make up the HHSAA.  The HHSAA is the

governing body for all high school athletics in Hawaiʻi, operating 44 statewide

championships in 18 different sports.  Dkt. No. 1, at PageID.5 (¶ 4); Dkt. No. 24-3, at

PageID.196 (ILH Ex. F).  To be able to participate in HHSAA games, member schools

must adhere to the HHSAA's "Administrative Regulations."  Dkt. No. 24-3, at Page

ID.196-97 (ILH Ex. F); Dkt. No. 25-2, at PageID.216.  These regulations include

HHSAA's own separate eligibility rule which provides:  "No student shall be eligible

after the expiration of eight consecutive semesters following his or her entrance into the

9th grade."  Dkt. No. 25-2, at PageID.217.  Although HHSAA's rule uses semesters and

ILH's rule uses school calendar years to calculate eligibility, the rules are substantively

identical.

At a hearing held on Ward's motion on October 6, 2025, ILH Executive Director

Blane Gaison testified that, unlike ILH, HHSAA does not permit exemptions from its

eligibility rules.  *See also* Dkt. No. 25-2 (HHSAA rules).  As a result, the ILH exemption process exists only for those sports sanctioned solely by ILH, and not HHSAA.  When ILH receives an exemption request for a sport sanctioned only by ILH, it is ILH alone that decides—without any control or influence by HHSAA—whether to grant the request.  When, by contrast, ILH receives an exemption request for a sport sanctioned by both ILH and HHSAA, it is ILH's policy to deny that request automatically because it lacks the authority to grant exemptions for HHSAA sports under HHSAA rules.  At least at this early stage in the litigation, Ward has not offered any evidence to contradict this testimony and the court therefore credits it.

To see how these different interscholastic organizations operate in practice, consider an example.  HBA and LJA are both ILH member schools and they field a joint "co-op" team for boys' water polo.  The Mid-Pacific Institute ("Mid-Pac") is also an ILH member school.  If the HBA-LJA co-op and Mid-Pac play each other, that is an intra-league ILH game falling solely under ILH rules.  Farrington High School, by contrast, is a member of the Oahu Interscholastic Association, another athletic "conference" under the HHSAA umbrella.  If the HBA-LJA co-op and Farrington were ever to play each other, that would be an inter-league game falling under HHSAA rules.  *See* Dkt. No. 25-2, at PageID.223 (HHSAA rules stating "[a]ll inter-league athletic contests shall be sanctioned by the HHSAA" and subject to the rules); Dkt. No. 24-3, at PageID.196-97 (ILH Ex. F).

The record, at this stage of the case, establishes that ILH boys' water polo teams do not participate in any HHSAA inter-league games or state championship tournaments.  ILH Executive Director Gaison testified that HHSAA does not sanction boys' water polo at all.[2]  As a result, there is no state championship for boys' water polo; instead, the ILH season concludes with an intra-league ILH playoff and championship.  In actuality, the latter half of the court's earlier example therefore would never come to pass—neither Farrington High School, nor any other public school within HHSAA, has a boys' water polo team against which ILH teams could compete.

2.  Some factual background is necessary to give proper context to the eligibility issues in this case.  Ward originally attended Kalaheo High School in 2021 for ninth grade.  Dkt. No. 1, at PageID.4 (¶ 10).  His time at Kalaheo was difficult.  The year prior, Ward's father had passed away, and the family was dealing with a stressful probate process when Ward entered the ninth grade.  *Id.* at PageID.6-7 (¶ 18).  To make matters

---

[2]      Ward moves to strike ILH's second supplemental memorandum, Dkt. No. 27, which includes an email from the executive director of HHSAA relating to whether HHSAA sanctions boys' water polo and whether its regulations therefore apply.  Ward argues that the brief was untimely filed and submitted in violation of Local Rule 7.2, which provides:  "No further or supplemental briefing shall be submitted without leave of court."  *See* Dkt. No. 32.

ILH did not obtain the court's leave to file its second supplement, and the court therefore GRANTS Ward's motion to strike.  The court notes, however, that the supplement contains factual information that was independently elicited through testimony at the October 6 hearing.  That independent testimony is properly considered by the court, although some of the facts also appear in the stricken supplement.

worse, Ward suffered a series of health setbacks during his freshman year—a broken

hip and prolonged complications from COVID-19—which ultimately caused him to

miss nearly five months of school.  *Id.*

In 2022, Ward decided to transfer from Kalaheo to another school and applied to

HBA.  During the admissions process, Ward and his mother, Rebekah Ward, spoke

with Patricia Chang, HBA's Admissions Director.  Chang recommended that, "[f]or

academic reasons," Ward should apply to HBA as a repeating freshman rather than as a

sophomore.  *Id.* at PageID.5 (¶ 11).  Chang, apparently unaware that athletics were a

priority for Ward, did not mention the ILH rule during their discussions; indeed, it is

undisputed that Chang—who was then in her first year as HBA's Admissions

Director—was unaware of the ILH rule's existence.  Dkt. No. 5-1, at PageID.33, Dkt. No.

5-4, at PageID.61 (¶ 10); *see also* Dkt. No. 5-8 (admitted into evidence as Defendant's

Exhibit E, Dkt. No. 35-1, at PageID.279 ("ILH Ex. E")).  On Chang's advice, Ward

applied as a ninth grader.  *Id.*  He was accepted to HBA and enrolled in the fall of 2022

to repeat the ninth grade.  *Id.* at PageID.4 (¶ 10).

Prior to his enrollment at HBA, no one at the school informed Ward that he

"would be sacrificing athletic eligibility by repeating the ninth grade."[3]  Dkt. No. 5-2, at

---

[3]    Although no one has disputed Ward's account of what HBA told or failed to tell
*him* about his eligibility, it appears that Ward's mother received a copy of HBA's
athletic handbook prior to Ward's enrollment, and it is undisputed that the handbook
provided information about the ILH rule.  See Dkt. Nos. 18-1, 18-2 (admitted into
evidence as Defendant's Exhibit C, Dkt. No. 35-1, at PageID.273), 18-3 (admitted into

PageID.53 (¶ 8) (admitted into evidence as Defendant's Exhibit I, Dkt. No. 35-1, at

PageID.294 ("ILH Ex. I")).  To the contrary, Ward attests that he "was told that there

would be no consequences regarding athletics," though the record is unclear as to who

precisely made that statement to him.  *Id.*  The record at this stage is clear, however, that

had Ward known that repeating a grade would negatively affect his eligibility, he

would have transferred elsewhere or applied for admission to HBA as a sophomore.

Dkt. No. 1, at PageID.6 (¶ 15).

Only after Ward had enrolled at HBA did he learn about the problems with his

athletic eligibility.  In September, Deron Oshiro, the school's Athletic Director, informed

Ward and his mother that Ward would not be able to play sports during his freshman

or senior years at HBA.  Ward's mother explained the extenuating circumstances that

had caused her son to repeat a grade to Oshiro and asked whether the eligibility issue

could be remedied.  Dkt. No. 5-4, at PageID.61 (¶ 6).  In response, Oshiro provided a

copy of the applicable rules and represented that Ward would be able to practice with

teams, even if he could not compete.  Dkt. No. 1, at PageID.7 (¶ 19).

Ward's mother later emailed Oshiro, asking him to submit a formal exemption

request to ILH on Ward's behalf.  *Id.* (¶ 20).  Oshiro forwarded her request to ILH's

executive director and assistant executive director, adding, "I know it would be up to

---

evidence as Defendant's Exhibit D, Dkt. No. 35-1, at PageID.275).  As Ward was a minor
at the time of his enrollment, HBA understood Rebekah Ward to represent her son.
Dkt. No. 18-1, at PageID.163 (¶ 3).

the body, but what are your thoughts?  I'm leaning toward not bringing it, especially

because of the precedent it would set."  *Id.* (¶ 21).  Whether ILH or Oshiro ever followed

up on the email is unclear, but from the current record, it appears that no formal

exemption request was made.  *Id.*

In the ensuing years, the issue lay dormant.  Ward joined the HBA-LJA co-op

boys' water polo team and established himself as a powerhouse in the pool:  he

participated in the USA Water Polo Junior Olympics and won the 2024 ILH Division 1-

AA Player of the Year award for boys' water polo.  Dkt. No. 5-2, at PageID.54 (¶ 13)

(ILH Ex. I).  Throughout this time, Ward continued to periodically check in with HBA

to see what could be done about his eligibility issue.  Dkt. No. 1, at PageID.7-8 (¶ 22).

Still, no action was ever taken.  *Id.*

Ward's senior year arrived in the fall of 2025, marking his fifth consecutive year

of high school since he initially enrolled at Kalaheo in 2021 and rendering him ineligible

under the ILH rule.  *Id.* at PageID.8 (¶ 23); *see also* Dkt. No. 21, at PageID.178 (¶ 9) (ILH

executive director declaring that Ward's eligibility "expired at the end of his junior

year").  Since the water polo season began on September 2, 2025, the ILH rule has been

applied to prohibit Ward from playing in games.  Furthermore, since September 18,

2025, Ward has—despite the Athletic Director's earlier representation—also been

barred from practicing with the team due to an "issue with the ILH's insurance."  Dkt.

No. 5-2, at PageID.54 (¶ 15) (ILH Ex. I).

In response to his total exclusion from the team, Ward made a demand through

counsel, asking HBA and ILH to grant him an exemption from the eligibility rule.  Dkt.

No. 5-3, at PageID.57 (¶ 4); *see also* Dkt. Nos. 5-5, 5-6.  Oshiro subsequently submitted a

formal fast-track exemption request to ILH on Ward's behalf.  Dkt. No. 1, at PageID.9 (¶

29); Dkt. No. 5-7.  The justification submitted for Oshiro's request explained:

> Upon enrolling the student as a 9th grader in the Fall of 2022, the HBA
> Admissions Department did not immediately disclose the rule of four (4)
> consecutive years of athletic eligibility to the family.  The Director of
> Admissions was going through her first admissions cycle and unaware of
> the rule.  Only when the Director of Athletics was informed of the student's
> status as a repeat student (September, 2022) was the family informed of the
> applicable eligibility rules.

Dkt. No. 5-7, at PageID.71.  Although the request was described as an "[e]xemption to

allow Zavior Ward participation in sports for the 2025-2026 school year," the document

itself indicated (and ILH Executive Director Gaison corroborated through testimony)

that the exemption was specific to water polo.  The top of the document explicitly reads,

"Sport: Water Polo."  *Id.*

ILH denied the exemption request by a 0-3 vote.  Dkt. No. 5-8 (ILH Ex. E).  The

denial included no explanation and no notice of the grounds for denial.[4]  *Id.*; Dkt. No. 5-

---

[4]     Although the denial itself provided no reasons, ILH Executive Director Gaison's
testimony at times appeared to suggest that the denial might have been based at least in
part on the fast-track committee's belief that Ward had already played four years of
water polo.  In fact, Ward could not have played water polo during his first freshman
year at Kalaheo High School—which, like all HHSAA schools, has no boys' water polo
team—and was barred from participating in his freshman year of water polo at HBA
due to a different ILH eligibility rule.  *See* Dkt. No. 5-2, at PageID.53 (¶ 9) (ILH Ex. I).

1, at PageID.35.  Neither Ward nor HBA was given a prior opportunity to be heard on

the request, and under ILH rules, fast-track exemption decisions are final and

unappealable.  *Id.*; Dkt. No. 21-2.

Time is of the essence.  The boys' water polo season for the HBA-LJA co-op team,

which began at the start of September, will conclude no later than November 3, 2025.

*See* LE JARDIN ACADEMY, *Boys Varsity II Water Polo*, https://www.lejardinacademy.org/

athletics/team-details/~athletics-team-id/2 (last visited October 6, 2025).  Already, Ward

has missed nine of the HBA-LJA team's twelve regular season games.  Any exemption

from ILH's eligibility rule would therefore need to be immediate to afford Ward any

meaningful measure of relief.

Ward filed this lawsuit on September 24, 2025.  Dkt. No. 1.  The same day,

he also filed motions for a temporary restraining order and a preliminary

injunction to restore his eligibility.  Dkt. Nos. 5, 6.  ILH responded with a motion

to dismiss and for summary judgment, as well as an opposition to Ward's

motions for injunctive relief.  Dkt. Nos. 17, 19.  ILH supplemented its opposition,

Dkt. No. 24, and Ward responded, Dkt. No. 25.  ILH subsequently filed a second

supplement, which Ward moved to strike as untimely filed and in violation of

the Local Rules.  Dkt. No. 32.

The court held a hearing on the motion for a temporary restraining order

on October 6, 2025, at which it heard the live testimony of ILH Executive Director

Gaison, as well as arguments from counsel.  Dkt. No. 36.  At that hearing, the

court admitted ILH's Exhibits A-F and H-L without objection.  *See* Dkt. No. 35

(ILH's exhibits and exhibit list).  Although other motions are pending, this order

addresses only Ward's motion to strike ILH's second supplement, Dkt. No. 32,

which it GRANTS, *see supra* p.7 n.2, and Ward's motion for a temporary

restraining order against ILH, Dkt. No. 5, the merits of which it turns to next.[5]

## LEGAL STANDARD

Temporary restraining orders are "designed to preserve the status quo and to

prevent immediate and irreparable injury before a hearing on a preliminary injunction

can be held."  *Thorson v. Haw. Pub. Hous. Auth.*, Civil No. 23-00412, 2024 WL 4303953, at

*3 (D. Haw. Sept. 26, 2024).

To obtain a preliminary injunction, a plaintiff must satisfy four requirements

known as the "*Winter* factors:"  "(1) a likelihood of success on the merits, (2) a

likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of

equities favors the plaintiff, and (4) that an injunction is in the public interest."  *Geo*

---

[5]     At the hearing on October 6, 2025, counsel for Ward confirmed that he only seeks
a temporary restraining order against ILH, and that he does not seek any provisional
relief against HBA at this time.  For that reason, although counsel for HBA made an
appearance at the hearing, the court did not require HBA to submit any briefing on the
present motion, and did not afford HBA's counsel an opportunity to ask questions of
ILH Executive Director Gaison or to make any arguments.  None of the court's
provisional factual findings or legal conclusions in this order are binding on HBA,
which will be free in future proceedings to raise its own disputes of either fact or law.

*Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  And while a court must move more quickly in

considering a motion for a temporary restraining order—and the record will likely be

less developed—"the legal standards applicable to [temporary restraining orders] and

preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151,

1159 n.3 (9th Cir. 2017) (per curiam) (internal quotation marks omitted).  Ward must

therefore meet each of the four *Winter* factors.

In applying the *Winter* factors, the Ninth Circuit uses a "sliding scale" approach,

"under which a strong showing on one of these factors may necessitate a lesser showing

on the others." *Thorson*, 2024 WL 4303953, at *3 (citing *All. for the Wild Rockies v. Cottrell*,

632 F.3d 1127, 1131 (9th Cir. 2011)).  Even so, Ward must still "make some showing on

all four elements." *Id.*  And he may not obtain a temporary restraining order without

showing that there are at least "serious questions going to the merits." *Id.* (cleaned up).

## DISCUSSION

The court first takes up the question of whether Ward has made a strong

showing of a likelihood of irreparable harm.  It then turns to whether Ward has shown

a likelihood of success on the merits—or at least serious questions going to the merits.

### A.    Irreparable Injury

"Irreparable harm can be difficult to define, but it is often marked by an inability

to be adequately remedied by money damages." *Edwards Vacuum, LLC v. Hoffman*

14

*Instrumentation Supply*, *Inc.*, 538 F.Supp.3d 1132, 1145 (D. Or. 2021).  Harms that are

"intangible and difficult to quantify" often qualify as irreparable, so long as the

threatened harm is not speculative.  *Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp.*

*Acquisition Co., Inc.*, 648 F. App'x 709, 711 (9th Cir. 2016).

Here, Ward contends that his exclusion from his senior water polo season

irreparably harms him in a number of ways.  He represents that not being able to play

water polo during his senior season, when college scouts may be most attentive, might

"limit the potential of receiving athletic scholarships to colleges."  Dkt. No. 5-1, at

PageID.49.  He adds that "being forced to sit out from a season can negatively affect a

student-athlete's mental well-being, constituting irreparable harm."  *Id.*  And he affirms

that "the loss of exposure and the experience of playing" that will result from "losing a

once-in-a-lifetime high school senior season" is itself "irreparable damage."  *Id.*

These arguments are well taken.  Exclusion from a high school sports team

would likely be distressing for any student-athlete, but it is especially so for Ward:  as a

Junior Olympian and ILH Player of the Year, Ward reasonably expects to receive

interest from recruiters for college athletic programs and potential scholarship

opportunities.  Dkt. No. 5-1, at PageID.35.  Common sense supports the inference that a

high school player's performance during his senior year is critical for these purposes.

*Id.*; Dkt. No. 1, at PageID.8 (¶ 24).  And the uncertainty that Ward's exclusion from the

team has produced about his future, paired with the fact that he will never have another

15

opportunity to play his senior season of water polo, has understandably contributed to

a substantial amount of emotional and mental distress.  Dkt. No. 5-1, at PageID.35.

ILH counters that Ward has offered only speculation to support his argument

that he will suffer irreparable harm in the absence of a temporary restraining order.  In

ILH's view, Ward "only speculates application of [the ILH rule] may interfere with

recruiter interest in his anticipated fifth-year performance"; ILH cites two cases in

support of that proposition.  Dkt. No. 19, at PageID.172 (citing *McGee v. Va. High Sch.*

*League, Inc.*, 801 F.Supp.2d 526, 531 (W.D. Va. 2011) and *Dziewa v. Pa. Interscholastic*

*Athletic Ass'n*, No. 08-5792, 2009 WL 113419 (E.D. Pa. Jan. 16, 2009)).

Ward has the better of this argument.  Setting his assertions about college

prospects aside, there is no question that the present loss of his senior season of water

polo—an actual, ongoing, and imminent harm that Ward is currently suffering—is

precisely the sort of intangible and unquantifiable injury for which money damages fall

well short of providing adequate compensation.  The lost experience, opportunity, and

camaraderie are not remediable:  Ward will never have another opportunity to play

high school water polo, or to practice with his high school water polo teammates.  And

the emotional and mental distress that Ward faces as a result of these losses likewise

cannot be undone or adequately addressed through a later monetary award.

Because ILH's argument focuses narrowly on Ward's lost college recruitment

opportunities, it offers no answer to these broader forms of irreparable harm.  Had

Ward argued that lost college recruitment was the *only* aspect of his exclusion from the team justifying a finding of irreparable harm, ILH's assertions about the speculative nature of that damage might have had more force. *See Dziewa*, 2009 WL 113419, at *7 (finding loss of collegiate recruitment speculative). But Ward does not make so narrow an argument. Instead, he claims that the whole of the damage stemming from his total exclusion from the team, including but not limited to lost interest from colleges, amounts to irreparable injury.

Even the authorities ILH cites appear to expressly allow for the possibility that claims of this broader variety could establish irreparable harm: *Dziewa* (and *McGee*, to the extent it bases its reasoning on *Dziewa*) noted that while the plaintiff "[could not] compete," he could still "attend practices and workout with the . . . team." *Id.* Ward, by contrast, has been barred not only from competing with the water polo team, but also from even practicing with his water polo team. That is a more drastic form of exclusion, and it distinguishes Ward's case from that of the plaintiff in *Dziewa*, whose ability to practice and workout with the team, at least in the view of that court, "remov[ed] the . . . situation from the category of irreparable harm." *Id.*

Ultimately, the court agrees with Ward that the more persuasive cases—including the few that have addressed the issue within the Ninth Circuit—support his claim of irreparable harm. *See Bingham v. Ore. Sch. Activities Ass'n*, 24 F.Supp.2d 1110, 1117 (D. Or. 1998); *see also Doe v. Horne,* 115 F.4th 1083, 1111 n.18 (9th Cir. 2024) (noting

17

that plaintiff "would have been irreparably harmed were she barred in playing in games for a . . . school year").  In *Bingham*, a factually similar case dealing with football instead of water polo, the district court explained:  "If Plaintiff is not granted preliminary injunctive relief, he will be unable to participate on the football team, as a trial on the merits of his claim cannot be conducted before the expiration of the football season.  This type of injury cannot be adequately remedied by monetary damages, and Plaintiff will lose for all time the chance to participate in fall sports during his final year of high school."  24 F. Supp.2d at 1117.  So too here, and that is sufficient to establish the likelihood that Ward will suffer irreparable harm.

B.    **Likelihood of Success on the Merits**

Although Ward has made a sufficient showing of irreparable harm, that alone is not enough to obtain a temporary restraining order.  Ward must also show that he is likely to succeed on the merits of his claims, or at least that there are serious questions going to the merits.  Indeed, "[l]ikelihood of success on the merits is the most important *Winter* factor," and so when a plaintiff fails to establish that factor, the court need not consider the remaining *Winter* factors.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (cleaned up).

Ward offers two categories of arguments on the merits.  First, he argues that the United States Constitution and Hawai'i State Constitution include a property right to participate in interscholastic athletics, and that in denying his exemption request, ILH

18

deprived Ward of that right without notice, a hearing, or a statement of reasons explaining the denial, in violation of the federal and state constitutions. Dkt. No. 5-1, at PageID.37-43. Second, he contends that his (non-constitutional) state law claims against HBA—alleging that HBA negligently misrepresented material facts about Ward's athletic eligibility during the admissions process and should be equitably estopped from denying his eligibility—independently justify the issuance of a temporary restraining order against ILH. *Id.* at PageID.44-48. The court addresses each argument in turn.

### 1.    Constitutional Claims

Ward claims a constitutional right to participate in interscholastic athletics and contends that ILH violated his right to procedural due process by denying his request to reinstate his eligibility without notice or an opportunity to be heard. Dkt. No. 5-1, at PageID.42-43. To prevail on this claim, Ward must establish two elements. The first— as the phrase "procedural due process" might suggest—is that Ward must show that he was harmed by "inadequate" process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023). ILH does not argue that the process it offered Ward was adequate in the relevant constitutional sense, and the present record certainly does not support the conclusion that it was.

The second element is perhaps less intuitive, but it is here that Ward's claims face serious hurdles: Ward must show a "deprivation by state action of a protected interest in life, liberty, or property." *Id*. Two aspects of this element are critical to this case.

19

One is that Ward must show that he has a constitutionally protected "property"

interest.  It is far from certain whether a constitutionally protected property interest is at

stake here, but because ILH has not yet offered any argument addressing that issue, the

court accepts for present purposes that Ward has made a sufficient showing on that

aspect of his claims.

The other aspect is that Ward must show his property interest was deprived by

"state action."  *See Apao v. Bank of N.Y.*, 324 F.3d 1091, 1095 (9th Cir. 2003) (explaining

that state action is a "dispositive question" in a federal due process challenge); *Winn v.

Brady*, 156 Haw. 119, 124, 570 P.3d 1086, 1091 (2025) (observing that state action is the

"threshold question" for procedural due process claims under the Hawai'i State

Constitution).  This, in the end, is where Ward's claims fall short.

As Ward acknowledges, "the ILH is a private, nonprofit corporation."  Dkt. No.

5-1, at PageID.39.  Ward nonetheless contends that "its denial of the exemption request

constituted state action for purposes of due process because it acts as the HHSAA's

delegate in enforcing eligibility rules."  *Id*.  According to Ward, ILH is a state actor due

to the "pervasive entwinement of public institutions" with HHSAA, emanating from

HHSAA's status as "the umbrella organization that governs all high school athletics in

Hawai'i," its majority-public school membership, and its authority to collect dues and

penalize schools and coaches, among other things.  *Id*. at Page.ID39-40.  Ward reasons

that as an institution under the HHSAA umbrella, ILH enforces HHSAA rules and

20

therefore engaged in state action by enforcing HHSAA's eligibility rule against him. Ward's argument essentially rests on the idea that ILH is a state actor because HHSAA is.

To establish the first component of his argument—that HHSAA is a state actor— Ward principally relies on *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001).  In *Brentwood Academy*, the Supreme Court considered whether the "TSSAA"—"a statewide association incorporated to regulate interscholastic athletic competition among public and private secondary schools"—engaged in state action when it enforced its rules against a member school.  531 U.S. at 290.  Key to the Court's resolution of the issue was the fact that 84 percent of TSSAA's membership consisted of public schools, with TSSAA officials "acting in their official capacity to provide an integral element of secondary public schooling."  *Id.* at 298, 300.  These facts led the Court to find a "pervasive entwinement of public institutions and public officials in [TSSAA's] composition and workings."  *Id.*

Ward asserts that the same sort of pervasive entwinement characterizes HHSAA's operations and supports a finding that HHSAA is a state actor.  ILH does not appear to dispute this argument, at least at this stage in the litigation.  And it is true that HHSAA's membership is primarily comprised of public schools, Dkt. No. 1, at PageID.10 (¶ 36); its purpose is to "support and promote athletics *as part of the high school education program*," Dkt. No. 5-1, at PageID.39 (emphasis added); and it enjoys a

21

certain amount of power over the operation of the public schools within its

membership, *id.* at PageID.40-41.  Although the factual similarities are not airtight, this

evidence is within the ballpark of what the Court found compelling in finding

pervasive entwinement in *Brentwood Academy*.  Ward arguably has, therefore, presented

at least a serious question going to the merits of whether HHSAA could be deemed a

state actor under existing law.

But that does not end the inquiry.  To show a serious question going to the merits

of the state action requirement in this case, Ward must not only show that HHSAA is a

state actor, but also that ILH acted as HHSAA's agent or delegate in denying the

exemption request.  *See Brentwood Acad.*, 531 U.S. at 296 (discussing when a private

actor's conduct may be fairly attributable to the State)**.**  And that argument faces one

major hurdle:  Ward's exemption request was sought under the ILH rule, not the

HHSAA rule.  Dkt. No. 5-7, at PageID.71 (seeking "Exemption to Section III, 3.1., G").

On the surface, moreover, the ILH rule is a distinct requirement from the HHSAA rule.

*Compare* Dkt. No. 17-3 (the ILH rule) (admitted into evidence as Defendant's Exhibit A,

Dkt. No. 35-1, at PageID.267) *with* Dkt. No. 25-2, at PageID.217 (HHSAA rule § 1(H)).

Ward rejoins that ILH's eligibility rule is essentially the HHSAA rule in different

dress and that the ILH rule amounts to a private actor's attempt to enforce a state-

sponsored mandate.  As an initial matter, he asserts, and the court agrees, that the rules

operate in the same way—as far as most schools are concerned, there is no difference

22

between four consecutive school calendar years and eight consecutive semesters—and a student could not conceivably be eligible under one rule but not the other.

The similarity between the ILH and HHSAA eligibility rules is not, however, enough to show that ILH is an agent (or otherwise under the influence or control) of HHSAA in its denial of an exemption from the eligibility rule in Ward's case. For one thing, the present record shows that HHSAA does not allow *any* exemptions from its eligibility rule, and it therefore logically follows that ILH has offered exemptions from its eligibility rule based on its own discretionary authority. For another, the present record—which includes the testimony of ILH Executive Director Gaison—shows that ILH indeed has unbridled discretion to grant exemptions from its own eligibility rule for sports, such as boys' water polo, that are sanctioned solely by ILH. Dkt. Nos. 21-2, 25-2. Ward offers no proof that HHSAA could overrule or reject ILH's grant of an exemption under ILH rules to a boys' water polo player, or that ILH would face any negative consequences from applying its exemption rule to a boys' water polo player however it sees fit. ILH Executive Director Gaison testified—with no contradiction from any evidence in the current record—that there would be no such sanctions or consequences. He explained that if ILH were to grant an exemption in a sport sponsored solely by ILH, it would have no effect on its relationship with HHSAA or on other ILH teams in HHSAA-sanctioned sports. And ILH has represented that it has a free hand precisely because HHSAA rules only apply to HHSAA (inter-league) games.

23

Dkt. No. 24-3, at PageID.197 (ILH Ex. F).  Ward has not, at this stage, offered any

countervailing evidence of his own.

　　　Ward does offer the argument that "[t]he ILH rule mirrors the HHSAA rule

because if it did not and contradicted the HHSAA rule its members would not be able

to participate in state tournaments."  Dkt. No. 25, at PageID.208.  If Ward could show

that the HBA-LJA co-op boys' water polo team was in fact participating in HHSAA

events, he might find stronger support for that theory.  But his argument is not well

founded in the current record, which shows that the schedule of the HBA-LJA co-op

boys' water polo team consists of exclusively intra-league ILH matches.  *See supra* p.6

(describing the hearing testimony of ILH Executive Director Gaison and HHSAA rule

§ 1(D)).

　　　The upshot is that Ward has not made a strong showing going to the merits of

whether ILH's conduct in denying him an exemption from its eligibility rule amounted

to "state action."  Given this shortcoming, the court cannot grant Ward a temporary

restraining order based on his procedural due process claims.

### 2.    State Law Claims

　　　Ward also raises two non-constitutional state law claims in support of his motion

for a temporary restraining order:  negligent misrepresentation and equitable estoppel.

But even if Ward could make a strong showing on the merits of these claims as against

HBA, he has not made any showing that ILH should be bound by HBA's conduct—or that HBA's conduct should result in provisional relief against ILH.

Ward confirmed at the hearing held on October 6, 2025, that his motion for a temporary restraining order sought relief only against ILH and not against HBA. But in his briefing in support of his motion, Ward has not made any argument that ILH is responsible for HBA's alleged tortious conduct. Instead, Ward's discussion of his state law claims is limited to what HBA allegedly did, without any mention of ILH at all. *See* Dkt. No. 5-1, at PageID.44-48. In the absence of any evidence or argument supporting the theory that ILH should be enjoined for HBA's alleged bad acts, the court cannot issue a temporary restraining order against ILH based on Ward's state law claims. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that there must be a "nexus" or "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint" in order for district court to grant relief).

## CONCLUSION

No one doubts the sincerity of Ward's motion, and the court readily accepts that Ward—an unquestionably talented athlete who is being denied the opportunity to participate in his senior year of boys' water polo—faces serious and irreparable harm without provisional relief. But at this early stage in the case, Ward has not shown a strong enough likelihood of success on the merits to allow the court to issue a

25

temporary restraining order.  For that reason, Ward's motion for a temporary

restraining order is DENIED.  Any relief, at this point, must come from ILH using its

discretion to do the right thing.

      IT IS SO ORDERED.

      DATED:  October 8, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 25-00415 MWJS-WRP, *Zavior Ward v. Interscholastic League of Honolulu*, et al.;
ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER

26