IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ZAVIOR WARD,<br><br>        Plaintiff,<br><br>    vs.<br><br>INTERSCHOLASTIC LEAGUE OF HONOLULU (ILH), *et al.*,<br><br>        Defendants. | Civil No. 25-00415 MWJS-WRP<br><br>ORDER DENYING DEFENDANT INTERSCHOLASTIC LEAGUE OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS |

## INTRODUCTION

Defendant Interscholastic League of Honolulu (ILH) moves for judgment on the pleadings of Plaintiff Zavior Ward's complaint, which alleges that ILH violated his constitutional right to procedural due process when it barred him from participating in his senior year of interscholastic athletics.  For the reasons that follow, the court DENIES the motion.

## BACKGROUND

As the parties are familiar with the factual allegations and procedural history, the court will not recount them here except as necessary to give context to its ruling.

Plaintiff Zavior Ward filed this lawsuit in September 2025.  His due process challenge centers on ILH's decision to deem him ineligible to participate in his senior year of high school water polo, as well as ILH's denial of his request for an exemption

from the eligibility rules without explanation, notice, or an opportunity to be heard.

Ward's complaint also alleges that Defendant Hawaii Baptist Academy (HBA) violated

Hawaiʻi state law by negligently misrepresenting that Ward would be able to play high

school sports during his senior year, and seeks to equitably estop HBA from barring his

participation in interscholastic athletics.  *See* Dkt. No. 1.

  Ward moved for a temporary restraining order (TRO) and preliminary injunction

in the hopes of salvaging his senior water polo season.  Dkt. Nos. 5, 6.  The court

ultimately denied the TRO request on the basis that Ward "had not made a strong

showing going to the merits of whether ILH's conduct in denying him an exemption

from its eligibility rule amounted to 'state action'" as required to establish a likelihood

of success on his procedural due process claim.  *See Ward v. Interscholastic League of*

*Honolulu*, Civ. No. 25-00415, 2025 WL 2855146, at *10 (D. Haw. Oct. 8, 2025).

  Ward withdrew his motion for a preliminary injunction following this denial.

Dkt. Nos. 55, 59.  But he indicated that he intended to submit a new exemption request

to ILH for a winter or spring sport such as volleyball or swimming and, depending on

the outcome of ILH's eligibility decision and any exemption request, amend his

complaint to reflect new developments.  *See* Dkt. Nos. 52, 54.  Ward has since taken

those steps:  He represents that a new exemption request was submitted to ILH on

January 2, 2026, and denied on January 5 without a hearing.  *See* Dkt. No. 64, at

PageID.604.

2

In advance of those latest developments, ILH moved for judgment on the pleadings on December 23, 2025.  Dkt. No. 60.  Ward opposed the motion, Dkt. No. 64, and ILH replied, Dkt. No. 65.  HBA moved to join ILH's motion on January 20, 2026.  Dkt. No. 62, which neither other party opposed.  ILH then requested that its motion be determined without a hearing, Dkt. No. 66, which Ward opposed, Dkt. No. 67.  The court agrees with ILH that the motion for judgment on the pleadings is suitable for disposition without a hearing, as authorized by Local Rule 7.1(c).

## DISCUSSION

The Federal Rules of Civil Procedures allow a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings "is subject to the same standard as a [R]ule 12(b)(6) motion to dismiss."  *Machado v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056, 1061 (D. Haw. 2006) (cleaned up).  In considering a Rule 12(c) motion, the court takes all allegations of material fact in the pleadings as true and construes them in the light most favorable to the plaintiff.  *Kruse v. Hawaiʻi*, 857 F. Supp. 741, 749 (D. Haw. 1994).  Dismissal is not warranted unless "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th

3

Cir.1990); *see also Kruse*, 857 F. Supp. at 749 ("[D]ismissal on the pleadings is proper only if the moving party is clearly entitled to prevail.").

In this case, ILH contends that is entitled to judgment as a matter of law because Ward's due process claims rest on his supposedly erroneous conclusion that he "has a 'recognized and substantial interest in participating in interscholastic athletics.'" Dkt. No. 60-1, at PageID.584 (quoting Dkt. No. 1, at PageID.11).  And ILH asserts that this court, the Ninth Circuit, and the Hawaiʻi Intermediate Court of Appeals—along with "the majority [of] our nation's courts"—have in the past held that no such constitutionally protected interest exists.  *Id.* at PageID.584-55.

It is true that if Ward does not possess a property right in participation in interscholastic athletics, then ILH could not have violated his due process rights by denying his eligibility exemption request.  That is because "[a] procedural due process claim has two distinct elements:  (1) a deprivation of a constitutionally protected liberty or property interest and (2) a denial of adequate procedural protections." *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018) (cleaned up).  The failure to allege a "constitutionally protected . . . property interest" would be fatal to Ward's complaint.[1]  To resolve ILH's motion for judgment on the pleadings,

---

[1]   The other essential element of a procedural due process claim is, of course, the requirement to establish state action, *see Reed v. Goertz*, 598 U.S. 230, 236 (2023), but ILH has not raised this issue in its motion.

then, the court must resolve whether the United States (or Hawai‘i[2]) Constitution recognizes a property interest in participation in interscholastic athletics.

As the United States Supreme Court has explained, property interests "are not created by the Constitution," but are "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). And "[k]ey to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022); *see also Brescia v. N. Shore Ohana*, 115 Haw. 477, 500-01, 168 P.3d 929, 952-53 (Haw. 2007) ("A property interest protected by the [federal or state] due process clause stems from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (cleaned up)). Whether Ward's complaint asserts a constitutionally protected property interest therefore turns on whether statutes, regulations, contracts, or established practice support the existence of the claimed property right.

---

[2] "The analysis of due process claims under the Hawai‘i Constitution is substantially similar to the analysis of due process claims under the United States Constitution." *Flint v. Cnty. of Kaua‘i*, 521 F. Supp. 3d 978, 993 n.8 (D. Haw. 2021) (citation omitted). And when, as here, "neither party attempts to differentiate their arguments under the United States and Hawai‘i Constitutions," the court will "analyze[] the state and federal due process claims together." *Id.*

5

In contending there is no such right as a matter of law, ILH relies on a handful of cases, decided no more recently than a quarter century ago, that it says overwhelmingly support the legal conclusion that Ward lacks a protectable interest in participation in interscholastic athletics.  The caselaw is the right place to start the analysis.  In considering a "question as to the existence or extent of a property right," courts "must apply a relevant decision by the state's highest court."  *Vandevere v. Lloyd*, 644 F.3d 957, 966 (9th Cir. 2011).  But the caselaw does not support ILH's position as strongly as it appears to believe.  Much of ILH's briefing focuses on the decisions of courts outside Hawaiʻi, which "are of limited value . . . because they rely on other states' laws" or "treat the property-interest question as if it were solely a question of federal constitutional law."  *J.K. ex rel. Kaplan v. Minneapolis Pub. Schs.*, 849 F. Supp. 2d 865, 875 (D. Minn. 2011); *see, e.g.,* Dkt. No. 65, at PageID.620 (discussing *Rutledge v. Ariz. Bd. of Regents*, 660 F.2d 1345 (9th Cir. 1981), *abrogated by Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (en banc)).

And to the extent ILH appropriately focuses on Hawaiʻi state law, it does not fare much better.  Neither party cites any decision of the Hawaiʻi Supreme Court considering the question presented by Ward's complaint, and this court has located none.  The only Hawaiʻi state law authority ILH invokes is a forty-year-old decision of the Hawaiʻi Intermediate Court of Appeals, *Makanui v. Dep't of Educ.*, 6 Haw. App. 397, 721 P.2d 165 (Haw. Ct. App. 1986).  The most recent decision of this court applying

6

Hawai'i law on this subject, meanwhile, is *James P. v. Lemahieu*, 84 F. Supp. 2d 1113 (D. Haw. 2000), but it merely relied on *Makanui* for its conclusion. *See James P.*, 84 F. Supp. 2d at 1119.

ILH is not wrong to rely on the *Makanui* decision. In situations where "the highest state court has not directly addressed an issue," a court should "look to the decisions of the intermediate state courts of appeal." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 735 (9th Cir. 1986). But whereas the decision of a state's highest court is controlling on state law, a decision of an intermediate state appellate court is merely "a datum for ascertaining state law" and should not be followed if "other persuasive data [suggests] that the highest court of the state would decide otherwise." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) (cleaned up).

This is where ILH's argument runs into trouble, for Ward argues that in the four decades since *Makanui* was decided, there has been a seismic shift in the way American society views student athletes—a shift which he claims the law can and should recognize. As he puts it, "[m]odern rules, expectations, and economic realities have transformed" interscholastic athletics from a mere "extracurricular activity" into a protectable interest. Dkt. No. 64, at PageID.605-06. His argument, in other words, is that under present factual circumstances, the Hawai'i Supreme Court would reach a different legal conclusion from the one the Intermediate Court of Appeals reached forty years ago.

7

The court cannot rule out Ward's argument as a matter of law and without any consideration of the evidence he might marshal at a later stage in this case. After all, it is far from clear that interscholastic athletics are the same today as they were forty years ago. High school sports are evolving at an astonishing pace; the student-athlete of the 1980s (or even of the 2010s) would hardly recognize the interscholastic athletics of today. Since the United States Supreme Court decided *National Collegiate Athletic Association v. Alston*, 594 U.S. 69 (2021), which held that the NCAA could not legally prohibit college athletes from receiving compensation, the state of collegiate athletics has shifted dramatically. Almost overnight, the NCAA rules changed, allowing star players—who previously would have forfeited their eligibility by receiving even the most nominal benefits in connection with their athletic prowess—to leverage their name, image, and likeness (NIL) rights in multimillion dollar deals. *See* Josh Lens, *Collegiate Athletes' Name, Image, and Likeness as a Constitutionally Protected Interest*, 78 SMU L. Rev. 41, 46-57 (2025). And there are indications that the law may be evolving in response. *See, e.g., Shannon v. Bd. of Trs. of the Univ. of Ill.*, 2024 WL 218103, at *9-11 (C.D. Ill. Jan. 19, 2024) (finding that a college athlete's claim of a property interest in his participation in a sport had "some likelihood of success on the merits" based in part on its relationship "to the development of his career as well as his current and future economic opportunities").

These effects have quickly trickled down to the high school level.  Agents and advertisers, seeking to get in on the ground floor (and to avoid a bidding war), have turned their attention to high school athletes.  State laws are rapidly changing to reflect this new reality.  By one count, 44 states and the District of Columbia now permit NIL deals at the high school level, with two of the six holdout states considering a change to their policies.  Braly Keller, *High School NIL: State-by-State Regulations for Name, Image and Likeness Rights*, OPENDORSE (Nov. 26, 2025), https://biz.opendorse.com/blog/nil-high-school/.  A recent article in *Esquire* magazine recounted the story of a high school quarterback who had recently been offered a $1.2 million NIL deal by a trading card company.  Abigail Covington, *The New Varsity, Inc.*, ESQUIRE, Sept. 2025, at 102.  Another seventeen-year-old top recruit had bought a luxury Italian SUV worth a quarter of a million dollars with the proceeds from his endorsement deal.  *Id.*

It is safe to say that no high school athlete was pulling up to practice in a Lamborghini legitimately purchased with the lawful fruits of athletic labor in 1986 when *Makanui* was decided, in 2000 when this court decided *James P.*, or in 2008, when the definitive law review article on this issue observed that virtually every court in the nation had denied the existence a protected property interest to participate in high school sports.[3]  Dkt. No. 60-1, at PageID.585 (discussing Matthew J. Mitten & Timothy

---

[3]    It is also true that most of the cases Ward cites in support of his constitutional argument are equally (if not more) outdated than those cited by ILH.  *See* Dkt. No. 64, at PageID.610-13 (discussing *Duffley v. N.H. Interscholastic Athletic Ass'n, Inc.*, 446 A.2d 462

Davis, *Athlete Eligibility Requirements & Legal Protections of Sports Participation Opportunities*, 8 Va. Sports & Ent. L. J. 71, 136 (2008)).  And while Hawaiʻi appears to be one of the few states that has not yet authorized high school athletes to secure NIL deals or otherwise secure these economic benefits for themselves, it is fair to argue that even in Hawaiʻi, the significance of high school sports—and societal understandings and established practices surrounding it—have dramatically changed in the face of the massive sums of money that are available if high school success translates into success at the collegiate level.  Once upon a time, success in high school sports might have served as a possible route toward securing a college scholarship; any other economic benefit, even a small one, would endanger their eligibility to play.  *See, e.g.*, Mitch Albom, *Fab Five:  Basketball, Trash Talk, the American Dream* (1993).  Today, in addition to the possibility of a scholarship (itself of possibly greater significance than before, given dramatically increasing tuition costs), that same high school success could result in a high school or college NIL deal that might secure an athlete more money in four years than many Americans make in a full career of work.  Depriving a high schooler of that

---

(N.H. 1982), and *Boyd v. Bd. of Dirs.*, 612 F. Supp. 86 (E.D. Ark. 1985)).  But that simply provides another reason why further factual development is necessary before this case can be decided.  *See, e.g.*, Dkt. No. 64, at PageID.613 (arguing that HHSAA and the Hawaiʻi Department of Education "have made similar representations on their websites" as the sorts of representations made by the NHIAA that the court relied upon in *Duffley*).

opportunity today is simply not the same as it would have been to deprive them of the opportunity forty—or even eighteen—years ago.

Ward observes as much in his response, pointing out that "[t]he cases cited in the motion are outdated, and do not consider the recent evolution of interscholastic athletics." Dkt. No. 64, at PageID.605. And because property interests must be determined in light of "rules or understandings that secure certain benefits," *Brescia*, 115 Haw. at 501, 168 P.3d at 953 (quoting *Roth*, 408 U.S. at 577), a sea change in the factual landscape can make a big difference in the court's analysis of whether the asserted right is entitled to recognition.

Take, for example, the United States Supreme Court's decision in *Goss v. Lopez*, 419 U.S. 565 (1975). In that case, Ohio high school student Dwight Lopez filed suit after he was suspended from school without a hearing. When his case reached the Supreme Court, the Court held that Lopez possessed a property interest in his education, and therefore his constitutional rights had been violated when he was suspended without due process. Central to the Court's holding was the fact that Ohio, although not constitutionally obliged to extend Lopez an education, had nonetheless established public high schools and made attendance compulsory. *See id.* at 573-74.

But imagine a scenario in which *Goss* had been brought in a different factual context. Keep all of the facts the same except for two changes: this time Lopez attends high school at the English High School in Boston, Massachusetts, and the year is 1821.

11

At that time, Boston English was the first and only public high school in America. *See* Paula Ebben, *English High School, the oldest public high school in America, celebrates 200 years in Boston*, CBS News (Sept. 30, 2022).  If Lopez had pressed a property interest in his public education on those facts, the Court would have considered his claim much more skeptically, and understandably so.  Yet if the same claim had been brought some thirty years later in 1850—by which point, every state in America had established a public school system, *see* Murray N. Rothbard, *Education: Free & Compulsory* 41 (1999)—the Court would have been faced with a dramatically different factual backdrop.  Still, no state would enact a compulsory education law until the following year.  Michael S. Katz, *A History of Compulsory Education Laws* 17 (1976).  So while it is difficult to say whether the Court would have recognized a protected property interest in this hypothetical, its legal analysis would have reflected the factual and legal developments in American society occurring during the intervening years.

What is clear is that by 1975, public education had undergone such an evolution as to enable the United States Supreme Court to announce a heretofore unrecognized—and at one point, perhaps unimaginable—constitutionally protected property interest.  It is also clear that one cannot readily pinpoint at what point the factual landscape had sufficiently shifted such that the law had no choice but to follow suit.  Perhaps the *Goss* decision could not have been reached a day earlier than January 22, 1975.  Or perhaps its holding was ripe as early as 1890, when just over half the states in the Union had

passed compulsory education laws, or 1918, by which point every state had enacted such legislation. Katz, *Compulsory Education Laws* 18.

In Ward's case, there is no *Goss* to light our way. And it is difficult to tell exactly where in the evolution of the law Ward's complaint stands at this juncture. But the factual changes underway across American society strongly suggest that in the absence of any modern case analyzing and applying Hawai'i law in this context, resolving this important constitutional question in a motion for judgment on the pleadings—as a matter of law and without any consideration of evidence—would be premature. Justice Felix Frankfurter once advised that in considering the application of established legal rules to the "totally new problems" created by a changing factual landscape, courts should take care not to "embarrass the future." *Nw. Airlines, Inc. v. Minn.*, 322 U.S. 292, 300 (1944); *see also TikTok Inc. v. Garland*, 604 U.S. 56, 62 (2025) (per curiam) (quoting *Nw. Airlines*, 322 U.S. at 300)). The same is true here. The litigants in this case must be given a meaningful opportunity to submit evidence and fully argue whether the Hawai'i Supreme Court would reach a different conclusion than the one reached by the Intermediate Court of Appeals forty years ago in *Makanui*, or whether any other independent source—statute, regulation, contract, or established practice—would support a finding that Ward possesses the property interest he claims. And the court must then resolve the legal issue with sensitivity to the evidentiary record the parties develop.

For these reasons, the court cannot agree that ILH is entitled to judgment on the pleadings. Whether state law and regulations, contracts, and established practice reflect that participation in interscholastic athletics is the kind of property interest protected by the Constitution is a material issue that the parties have not fully briefed, and that discovery will be needed to resolve. *Cf. Whitaker v. Bd. of Higher Educ.*, 461 F. Supp. 99, 105 (E.D.N.Y. 1978) (denying a Rule 12(b)(6) motion "because plaintiff should be given an opportunity to prove that under state law . . . he had [the] property interest" claimed under the Due Process Clause"); *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 536 F. Supp. 1065, 1086 & n.24 (E.D. Pa. 1982) (declining to grant a motion for judgment on the pleadings when the property interest issue had not been "brief[ed] . . . in some detail").

## **CONCLUSION**

ILH's motion for judgment on the pleadings is DENIED. And given the denial of ILH's motion, HBA's motion to join it is DENIED as moot.

IT IS SO ORDERED.

DATED: March 6, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 25-00415 MWJS-WRP, *Zavior Ward v. Interscholastic League of Honolulu*, et al.;
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS